15 CV 02733

James H. Power
Marie E. Larsen
HOLLAND & KNIGHT LLP
31 West 52nd Street
New York, New York 10019
Telephone: 212-513-3200
Telefax: 212-385-9010
Email: james.power@hklaw.com
       marie.larsen@hklaw.com

*Attorneys for Plaintiff*
*Sigma Tankers Inc*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SIGMA TANKERS INC,
individually and on behalf of
M/V DUBAI ATTRACTION (IMO No. 9422536),
M/V ORCHID (IMO No. 9624079)

                              Plaintiff,

    - against -

O.W. BUNKER PANAMA S.A., O.W. BUNKER
USA INC, O.W. BUNKER NORTH AMERICA
INC, O.W. BUNKER HOLDING NORTH
AMERICA INC, ING BANK N.V.

                              Defendants.

15 Civ. _____ (   )

---

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S APPLICATION FOR RESTRAINING ORDER PURSUANT TO 28 USC § 2361

Sigma Tankers Inc ("Sigma Tankers or "Plaintiff") files this memorandum of law in support of its Application for a Restraining Order Pursuant to 28 U.S.C § 2361 of the Federal Interpleader Act and posting security under Rule E(5)(a) of the Supplemental Rules for Admiralty and Maritime Claims.

## STATEMENT OF FACTS

Plaintiff filed its Complaint for Interpleader pursuant to 28 U.S.C. § 1335 to resolve competing claims to amounts owed for the sale and delivery of fuel to the vessels M/V Dubai Attraction and M/V Orchid (the "Vessels") in the Galveston Offshore Lightering Area, offshore Texas on October 25 and November 5, 2014 (the "Fuel Deliveries"). As set forth in its Complaint for Interpleader, filed herewith, Plaintiff and the Vessels are faced with uncertainty as to the proper recipient of funds owed for the Fuel Deliveries.

Sigma Tankers ordered bunkers to be loaded onboard and consumed by the vessels M/V Dubai Attraction and M/V Orchid as set forth in the Complaint. The bunkers were delivered to the Vessels on October 25 and November 5, 2014. Bunker delivery receipts for the Fuel Deliveries were issued by O.W. Bunker Panama S.A. ("O.W. Panama"). Sigma Tankers received two invoices with internal accounting references to O.W. Bunker North America Inc. and requesting payment to O.W. Panama to an ING Bank N.V. ("ING") account.

On November 7, 2014, O.W. Bunker AS and certain of its Danish subsidiaries and affiliates filed for bankruptcy in their home jurisdiction of Denmark. On November 13, 2014, O.W. USA Inc ("O.W. USA"), O.W. Bunker North America Inc ("O.W. North America") and O.W. Bunker Holding North America Inc. ("O.W. Holding") (collectively, the "Debtors") all filed voluntary petitions pursuant to chapter 11 in the United States Bankruptcy Court for the District of Connecticut as Case Nos. 14-51720, 14-51721 and 14-51722.

Pursuant to an Omnibus Security Agreement dated December 19, 2013 between O.W. Bunker & Trading A/S and certain of its subsidiaries (believed to include O.W. USA, O.W. North America and O.W. Holding), and ING as Security Agent, the O.W. entities have allegedly assigned certain rights in respect of their supply contracts as security to ING.

Due to the bankruptcy filings of O.W. Bunker & Trading AS, O.W. USA, O.W. North America, and O.W. Holding there is a significant risk that the O.W. entities or ING or another party will take action to collect the funds owed for the bunkers. Indeed, demands for payment and an threats of arrest has been received from O.W. Panama. *See* Comp., Ex. 6.

Under United States maritime law, the contract supplier of necessaries, including fuel, to a vessel obtains a maritime lien against that vessel. Additionally, under certain circumstances, a physical supplier or transporter may also assert a maritime lien on that vessel. As such, a number of claimants have already or may allege rights to amounts owed for the sale of necessaries to the Vessel, giving rise to a maritime lien claims under the Maritime Lien and Commercial Instruments Act, 46 U.S.C. § 31301 *et seq*. There also exists the alleged *in personam* rights of action asserted by ING and possibly O.W. Panama.

Plaintiff cannot ascertain whether the amount owed should be paid to O.W. Panama, O.W. USA, O.W. North America, O.W. Holding, ING or some other party in order to extinguish all maritime liens against the Vessels for the Fuel Deliveries and to prevent their arrest or attachment in this District or elsewhere as well as discharging Sigma Tankers's *in personam* liabilities (if any).

The Vessels face threat of arrest by one or more of the defendants claiming to assert a maritime lien, which would cause harm to Plaintiffs and the Vessels, delay the Vessels, affect innocent third parties with interests in the Vessels' cargo and generally inhibit maritime commerce. Similarly, allowing *in personam* actions to proceed in possibly multiple jurisdictions makes little sense given the presence of funds in this action as well as all the (known) necessary parties.

## ARGUMENT

### THE CLAIMANTS SHOULD BE ENJOINED FROM *IN REM* AND *IN PERSONAM* ACTIONS IN CONNECTION WITH THE FUEL DELIVERIES

An interpleader action protects a disinterested stakeholder from multiple claims to a limited fund by providing a forum and procedure to adjudicate all competing interests. *State Farm Fire & Casualty Co. v. Tashire*, 386 U.S. 523, 534 (1967). Section 1335 expressly anticipates that interpleader is appropriate when a claimant "is claiming or may claim to be entitled to" funds at issue. Further, the Supreme Court has stated that the federal interpleader statute "is remedial and to be liberally construed." *Id.* at 533.

Once the requirements of interpleader are satisfied, the Court may issue an injunction to enjoin the claimants from instituting prosecuting any state or federal proceeding involving the subject property. *Companion Life Insurance Co. v. Schaffer*, 442 F. Supp. 826 (S.D.N.Y. 1977). With respect to injunctions, the Federal Interpleader Act provides:

> In any civil action of interpleader or in the nature of interpleader under section 1335 of this title, a district court may issue its process for all claimants *and enter its order restraining them from instituting or prosecuting any proceeding in any State or United States court affecting the property, instrument or obligation involved in the interpleader action until further order of the court.* . . .
> Such district court shall hear and determine the case, and may discharge the plaintiff from further liability, make the injunction permanent, and make all appropriate orders to enforce its judgment.

28 U.S.C. § 2361. (Emphasis added.)

The purpose of § 2361 is to relieve the stakeholder from the burden of defending multiple and conflicting actions and to make it possible for the Court to distribute the funds payable by the plaintiff, by entering an order restraining claimants from instituting or prosecuting proceedings in any state or federal court affecting the property involved in the interpleader. *See Orseck, P.A. v. Servicios Legales De Mesoamerica S. De R.L.*, 699 F. Supp. 2d 1344, 1351 (S.D.

Fla. 2010). Injunctive relief will prevent a multiplicity of action and reduce the possibility of inconsistent determinations or the inequitable distribution of the funds. *U.S. v. Major Oil Corp.*, 583 F.2d 1152, 1158 (10th Cir. 1978). This injunctive power is nationwide and is intended to halt any proceeding deemed inconsistent with the interpleader action. *Id.; see also O'Daniel v. Porter*, 240 F.2d 636 (D.C. Cir. 1957) (enjoining garnishment and foreclosure actions).

District courts have "extensive discretion under Section 2361 with regard to the issuance and the scope of the order." *Orseck,* 699 F. Supp. 2d at 1351; *see also Commerce & Indus. Ins. Co. v. Cablewave Ltd*, 412 F.Supp. 204, 206 (S.D.N.Y. 1976); 7 Wright and Miller, *Federal Practice and Procedure* § 1717. Accordingly, this Court may enjoin future arrests of the Vessels in any District Court and require the claimants to resolve their claims in this Court, a forum with jurisdiction where all proper parties are joined and the *res* is within the Court's jurisdiction. *See Holcomb v. Aetna Life Ins. Co.,* 228 F.2d 75 (10th Cir. 1955).

The injunction provided by 28 U.S.C. § 2361 is excepted from the requirements of Rule 65(b) of the Federal Rules of Civil Procedure by Rule 65(e), which provides, in relevant part: "These rules do not modify ... 28 U.S.C. § 2361, which relates to preliminary injunctions in actions of interpleader or in the nature of interpleader." Fed. R. Civ. P. 65(e). *See also Mitchum v. Foster,* 407 U.S. 225, 234 (1972); *United States v. Sentinel Fire Ins. Co.,* 178 F.2d 217, 231 (5th Cir. 1949). Accordingly, this Court has the power to enjoin, **without notice**, other actions seeking a determination of the rights being contested. *Prudential Ins. Co. of Am. v Shawver,* 208 F. Supp. 464, 471 (W.D. Mo. 1962); *Minnesota life Ins. Co. v. Creasy,* No. 14-11, 2014 WL 715556 (M.D.Ga Feb. 24, 2014) (issuing restraining order without notice); *Aetna Cas. & Sur. Co. v. Ahrens*, 414 F.Supp. 1235, 1242 (S.D.Tex. 1976) (issuing a restraining order without

notice "to preserve the status quo" while considering the Court's interpleader jurisdiction and allowing for service of notice of the action after entry of injunction).

Courts have heard actions in interpleader, or in the nature of interpleader, in the admiralty context, including both *in personam* and *in rem* claims. *See Gabarick v. Laurin Mar. (Am.) Inc.*, 753 F.3d 550, 556 (5th Cir. 2014) (upholding §2361 injunction that restrained charter party action); *Eagle, Sigma & British Dominions v. Tadlock*, 14 F. Supp. 933, 935-36 (S.D. Cal. 1936). In *Tadlock,* the court directly addressed the issue of whether it had the power to enjoin the assertion of a maritime lien against the subject vessel in another District. "Ultimately, the question involved is whether we have the power, under the provisions of the enactment cited [the precursor to §2361], to enjoin the prosecution of the libel in admiralty and to compel the libellant in that case to litigate his right to the fund in this proceeding, in interpleader, on the equity side of this court." *Id.* at 935. After examining the language of the interpleader statute (the precursor to the current §2361) and the history of courts in admiralty which fashion interpleader-like remedies, the court concluded that it had direct authority to exercise its interpleader jurisdiction to enjoin a litigant from prosecuting any suit pending in admiralty. "Thus, assuming that, in interpleader, certain liens, rights, or priorities established by maritime law were involved, equity would have full power to determine those rights according to the principles of maritime law." *Id.* at 937; *see also Copp v. DeCastro & Donner Sugarrefining Co.,* 6 F. Cas. 520 (No. 3,215) (E.D.N.Y. 1875).

The Defendants-claimants' right to assert a maritime lien (and any *in personam* claims) will be fully preserved as the claims can be asserted against the funds in the court's registry. *See e.g. Sigmaboard Venture Shipping, Inc. v. Cainomar Transp., Inc.*, 1994 A.M.C. 1320 (S.D.N.Y. 1993) (property already held in *custodia legis* can be attached) (citing *The Lottawanna,* 87 U.S.

6

(20 Wall.) 201 (1873) and *Ravenna Tankers Pte. v. Omni Ships Pte. Ltd.*, 2014 A.M.C. 1190 (E.D. La. 2013) (held claimant's lien can attach to funds in the Court Registry as funds were substituted *res* for ship)). The funds on deposit in the registry of the Southern District of New York may be deemed security provided by Plaintiff individually and on behalf of the Vessels under Rule E of the Supplemental Rules for Admiralty and Maritime Claims, just as though a claimant had in fact physically served a warrant of arrest on the Vessels or arrested the Vessels outside the United States.

Where, as here, a stakeholder pleads Rule 9(h) and seeks to deposit security sufficient under Rule E(5)(a) to secure the *in rem* claims of third parties in order to release a vessel or prevent its arrest it may do so through 28 U.S.C. § 1335. By depositing the substitute *res* in an amount determined to be sufficient under Rule E(5)(a) Plaintiff invokes the admiralty jurisdiction of the District Court. Courts sitting in admiralty have broad discretion to fashion equitable remedies. These rightfully include issuing orders enjoining arrest of a vessel anywhere in the world for a claim in which the owner has posted substitute security.[1] As such, the power of the District Court may reach beyond the express language of 28 U.S.C. § 2361 when the Court has determined the substitute *res* under Rule E(5)(a) has been deposited in the court registry. Plaintiff seeks to deposit such amount in this case in order to prevent the arrest of the Vessels by defendants anywhere in the world on a claim for the Fuel Deliveries.

Sigma Tankers and the Vessels are faced with an actual threat of litigation for the payment on the exact same fuel purchases consisting of the risk of the arrest of the Vessels at any port in the United States or elsewhere by any of the many claimants to the subject funds, making

---

[1] To the extent that the relief sought by Sigma Tankers would enjoin the defendants/claimants from initiating actions against Sigma Tankers and/or the Vessels in jurisdictions outside the U.S., Sigma Tankers submits such relief is well within the Court's equitable jurisdiction. *See, e.g., T-Jat Sys. 2006 Ltd. v. Amdocs Software Sys. Ltd.*, 2013 WL 6409476, No. 13 Civ. 5356 (HB) *4 (S.D.N.Y. Dec. 9, 2013)("[E]quity along with the threats of inconsistency and a race to judgment also support an anti-suit injunction.").

7

it impossible for Plaintiff or the Vessels as innocent stakeholders to do business. An arrest or attachment is not an absolute right, but rather serves to provide a maritime claimant with jurisdiction over a party and security for its maritime claim. *See Vitol v. Primerose Shipping Co. Ltd.*, 708 F.3d 527, 536-37 (4th Cir. 2013); *The Rosinco*, 2002 A.M.C. 1157 (E.D. Wis. 2001). As Plaintiff individually and acting on behalf of the Vessels by this interpleader submits to this Court's jurisdiction for the amount claimed for the Fuel Deliveries and seeks to provide substitute *res* reflecting the very funds which will secure claimants' maritime lien and other claims, the balance of equities weighs in favor of enjoining arrest or attachment or other actions against Sigma Tankers or the Vessels. An injunction will protect the jurisdiction of this Court and will prevent a multiplicity of actions against Sigma Tankers and the Vessels, who disclaim any interest in the funds and are unable to determine the validity of any claimant's possible maritime lien on the Vessels or other claims related to the funds at issue.

Furthermore, the proposed interpleader amount is sufficient to constitute adequate security as substitute *res* for any claimants' *in rem* maritime lien claims including any claim by O.W Panama, O.W. USA, O.W. North America, O.W. Holding or ING. A good example of this principle is the very common use in maritime cases of security in the form of a Letter of Undertaking ("LOU"):

> Generally, once a LOU is issued, the letter becomes a complete substitute for the *res* and the maritime lien transfers from the vessel to the LOU. *Maritima Antares, S.A. v. The Vessel ESSI CAMILLA*, F. Supp. 694, 695 (E.D. Va. 1986) ("[A]s a substitute for the *res*, [it] ha[s] the effect of transferring the maritime lien from the vessel to the security fund,"); *see also Mackensworth v. S.S. American Merchant*, 28 F.3d 246, 252 (2d Cir. 1994) ("In accordance with generally accepted practice, this Letter of Undertaking becomes the substitute *res* for the value of [the] claim.").

*Petroleos Mexicanos Refinancion v. M/T King A*, 554 F.3d 99, 104 (3d Cir. 2009). An arrest is not required in order to transfer a maritime lien claim from the vessel to a substituted *res* – indeed, this often takes place upon the mere threat of an arrest. *See Astra Oil Co., Inc. v. Rover Navig., Ltd.*, 344 F. 3d 276, 278 (2d Cir. 2003) (after vessel arrest threatened, LOU issued). As such, it is appropriate that the interpleader funds can become a substitute *res*, especially given that Plaintiff and the Vessels have sought the end result of the posting of security in a maritime action, i.e., the protection of the vessels from further arrest anywhere in the world for payment arising from the Fuel Deliveries.

Supplemental Admiralty Rule E provides that "…the execution of such process shall be stayed, or the property released, on the giving of security, to be approved by the court or clerk, or by stipulation of the parties, conditioned to answer the judgment of the court… the bond or stipulation shall be conditioned for the payment of the principal sum and interest thereon at 6 per cent per annum." Supp. R. E(5)(a). Plaintiff, individually and on behalf of the Vessels, has made an application to deposit $414,903.92 into the registry of this court, which is the amount due for the supply of bunkers to the Vessels, plus 6% interest, thereby complying with the security requirements of Supplemental Admiralty Rule E. When and if any party appearing in response to this interpleader makes a showing that the amount is not reasonable for the claim at issue this Court could issue a supplemental order increasing the funds on deposit as appropriate.

Without the restraining order, Sigma Tankers may be required to post security multiple times as a result of multiple arrest or attachment actions against the Vessels. Requiring Plaintiff to secure double liability for a single fuel delivery would be inequitable and even unconstitutional. "It is the object of courts to prevent the payment of any debt twice over." *Harris v. Balk*, 198 U.S. 215, 226 (1905); *see also Embree v. Hanna*, 5 Johns 101, 102 (1809)

("Nothing can be more clearly just, than that a person who has been compelled, by a competent jurisdiction, to pay a debt once, should not be compelled to pay it over again"). Applying this principle, the Supreme Court warned that even where the court has *in rem* jurisdiction, "the holder of such property is deprived of due process of law if he is compelled to relinquish it without assurance that he will not be held liable again in another jurisdiction or in a suit brought by a claimant who is not bound by the first judgment." *Western Union Telegraph Co. v. Pennsylvania*, 368 U.S. 71, 75 (1961). This principle has been recognized by courts in this state and District in many contexts. *Shaheen Sports, Inc. v. Asia Ins. Co.*, 11-920, 2012 WL 919664 at *8 (S.D.N.Y. Mar. 14, 2012) (noting party's "concern for potential inconsistent judgments and double liability is therefore very real" and that prevention of double liability is a "judicial priority") (citing cases). *See also South Pacific Shipping Co. Ltd. Inc. v. Redi-Fresh Produce Inc.*, No. 14-4156 (LAK) (AJP) Dkt. No. 34 at p. 12 (Report and Recommendation granting sanctions in an interpleader case where party sought to hold garnishee doubly liable).

### THE AUTOMATIC STAY DOES NOT APPLY TO INTERPLEADER ACTIONS WHERE THE DEBTOR IS A NOMINAL DEFENDANT

Firstly, this is a maritime action brought pursuant to Rule 9(h), with supplemental jurisdiction under 28 U.S.C. § 1335. The District Court is the only court under Article III of the Constitution with original jurisdiction over maritime actions. *E.g., Romero v. International Terminal Operating Co.*, 358 U.S. 354, 360-61 (1959). Pursuant to Article III, Congress may not "withdraw from [Article III] judicial cognizance any matter which, from its nature, is the subject of a suit at the common law, or in equity, or in admiralty." *Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. 272 (1856); *Northern Pipeline Construction Co. v. Marathon Pipeline Co.*, 458 U.S. 50 (1982); see also *Stern v. Marshall*, 564 U.S. 2 (2011) (where bankruptcy court could not enter final judgment on state law claim). Courts in this District have discussed the

effect the *Stern* case has had on the power of bankruptcy courts. E.g., *In re Lyondell Chemical Co.*, 467 B.R. 712, 719 (S.D.N.Y. 2012) ("Under *Stern*, it is not the core/non-core distinction but Article III that determines the bankruptcy court's adjudicative authority") (finding that final orders can only be made by the non-Article III bankruptcy court on consent of all the parties). The District Court is the only court with authority to determine all the in rem maritime claims at issue and the relief requested here.[2]

Federal Courts within the Second Circuit routinely have held that the automatic stay under Section 362 of the Bankruptcy Code does not apply to non-bankruptcy interpleader actions where a bankrupt debtor is a nominal defendant (i.e., not a defendant in the true sense but rather a mere claimant to the funds deposited). The leading case for this black letter law is *Price & Pierce Int'l, Inc. v. Spicers Int'l Paper Sales, Inc.*, 50 B.R. 25, 26 (S.D.N.Y. 1985) (as debtor was in reality a nominal defendant in interpleader action, interpleader action did not violate automatic stay). The Second Circuit has positively cited *Price & Pierce* as an example of the practical limits of the automatic stay imposed in bankruptcy cases. *In re Prudential Lines Inc.*, 928 F.2d 565, 573 (2d Cir. 1991). Additionally, there are several other examples of Federal Courts within the Second Circuit issuing decisions consistent with the holding of *Price & Pierce*. *In re Enron Corp.*, 306 B.R. 465, fn. 3 (Bankr. S.D.N.Y. 2004) (distinguishing between application of automatic stay to declaratory judgment actions and interpleader action discussed in *Price & Pierce*); *Commercial Union Ins. Co. v. Johns–Manville Corp. (In re Johns–Manville Corp.)*, 31 B.R. 965, 970 (S.D.N.Y.1983) (distinguishing interpleader actions and affirming bankruptcy court's conclusion that automatic stay applied to pending declaratory judgment action).

---

[2] In fact, a physical supplier, NuStar Energy Services, Inc. has appeared in Bankruptcy Court for the District of Connecticut to argue against an interpleader in the Bankruptcy Court, stating that "[Owner or Charterer] has a remedy in that it may appear in the District Court Action and post security to avoid seizure of the Vessel." *SHV Gas Supply & Risk Management SAS v. O.W. Bunker USA, Inc., et al.*, No. 14-05068 (Bankr. D.Conn.) [D.E. 6].

Since Section 362 of the Bankruptcy Code mandates a stay only of litigation "against the debtor" designed to seize or exercise control over the property of the debtor, it does not prevent entities against whom the debtor proceeds in an offensive posture from protecting their legal rights through nonbankruptcy litigation. *See In re Berry Estates, Inc.*, 812 F.2d 67, 71 (2d Cir. 1987) (automatic stay provision applicable only to actions against the bankrupt or to seizures of property of the bankrupt), *cert. denied*, 484 U.S. 819 (1987); *In re Financial News Network Inc.*, 158 B.R. 570, 573 (S.D.N.Y.,1993). In this case, the automatic stay does not apply to the interpleader because the O.W. debtors are merely nominal defendants (i.e., claimants to the funds) in the interpleader litigation and the funds being deposited with the court registry do not constitute property of the estate of the debtors. The following excerpt from the *Price & Pierce* decision is instructive:

> The automatic stay provision normally applies to actions in which the bankrupt is a defendant. Although [debtor] is a named defendant, its status in that regard is nominal. In making a claim to the Fund, [debtor] takes the role of plaintiff in this action. Thus, this is not an action to obtain possession of property held by [debtor], as required for the invocation of § 362; rather, it is an action to determine whether the Fund, or some part thereof, rightfully belongs to [a third party] or [debtor].

*Price & Pierce*, 50 B.R. at 26.

In the admiralty context, actions to foreclose on and adjudicate maritime liens on property which does not belong to the debtor but which may have an effect on the debtor have been held to not violate the automatic stay. In *In re Chugach Forest Products, Inc.*, 23 F.3d 241 (9th Cir. 1994) the arrest of a vessel pursuant to Admiralty Rule C with debtor's property on board "did not threaten to dismember the bankruptcy estate or impede the reorganization proceedings... the foreclosure merely delayed [debtor's] expected receipt of cash from the sale of its [cargo]. Such incidental effect is insufficient to trigger the stay." *Id.* at 245. Similarly, in

*In re Riffe Petroleum Co.*, 601 F.2d 1385 (10th Cir. 1979), the seizure of a ship on charter to the debtor to enforce a maritime lien against the vessel did not violate the automatic stay because the ship was not the property of the debtor at the time the bankruptcy petition was filed. "Congress did not give the bankruptcy court exclusive jurisdiction over all controversies that in some way affect the debtor's estate. The fact that a debtor's property may be affected by proceedings under admiralty law does not constitute a 'claim' against that 'property.' *Id.* at 1390 (internal citations omitted). Similarly, in this interpleader action the funds deposited into the registry are not the property of the debtor, and the competing maritime lien claims against it must be adjudicated. Even if the admiralty proceeding affects the debtors by delaying its collection of funds they may be owed, the proceeding is outside the scope of the automatic stay, which seeks to protect property in debtor's possession at the time of filing the bankruptcy petition.

Accordingly, the automatic stay under 11 U.S.C. § 362 does not apply to the interpleader action and the Southern District of New York's determination of the proper owner of the deposited funds.

## CONCLUSION

WHEREFORE, interpleader Plaintiff Sigma Tankers Inc, individually and on behalf of the vessels M/V Dubai Attraction and M/V Orchid, requests that this Court enter an order pursuant to 28 U.S.C. § 2361 restraining any claimants now or later known from instituting and prosecuting any proceeding against Sigma Tankers Inc *in personam*, or against the Vessels *in rem*, including but not limited to the arrest or attachment of the Vessels pursuant to Supplemental Admiralty Rule C or Rule B in any United States District Court, or similar action against the Vessels or Sigma Tankers elsewhere in the world, based on the assertion of any claim related to

the provision of bunkers ("necessaries") described herein as the Fuel Deliveries, and for such other and further relief as this Court deems just and equitable.

Dated: New York, New York
       April 8, 2015

                                    HOLLAND & KNIGHT LLP

                                    By: _____
                                    James H. Power
                                    Marie E. Larsen
                                    31 West 52nd Street
                                    New York, New York 10019
                                    Telephone: 212-513-3200
                                    Telefax: 212-385-9010
                                    Email: james.power@hklaw.com
                                                     marie.larsen@hklaw.com

                                    *Attorneys for Plaintiff Sigma Tankers Inc,*
                                    *individually and on behalf of*
                                    *M/V DUBAI ATTRACTION (IMO No. 9422536),*
                                    *M/V ORCHID (IMO No. 9624079)*

34515928v1